GEO. HOADLY, ETC., *v.* A. J. VANDERGRIFT.

Auctions and Auctioneers—Purchaser—Estoppel.

Where a bidder at auction sale relied on the advice of a friend in the purchase of the property rather than on the statements of the auctioneer, he has no cause to complain against the vendor of the land, in case it turns out that the title to the land is not clear.

Auction and Auctioneers—Representations by Auctioneer—Liability of Owner.

Where at an auction sale the auctioneer makes representations as to the title or as to the character of the goods sold, and thereby induced one to purchase on the faith of such representations, the principal will be held responsible for any injury resulting to the purchaser because of such representations.

APPEAL FROM KENTON CIRCUIT COURT.

September 13, 1873.

OPINION BY JUDGE PETERS:

In his answer appellee says that the chief and only inducement to him to pay the $1,500 bonus on the lease was the two covenants aforesaid coupled with the statement of the plaintiff's agent that the title of said Wolf to the premises was good and indefeasible, where-

by he was induced to believe that Wolf was able to perform said covenants.

He says that because of the want of title, and ability in said Wolf to comply with the covenants in said lease as represented to him by plaintiffs, said lease was not worth as much by $1,500 as it would have been had the said representation as to the title of said premises been true, and that he has been damaged in the full and just sum of $1,500 by reason of said representation being untrue, and he therefore pleads, etc. In a previous part of his answer appellee alleges that the misrepresentations as to the title were made by Kohl, the auctioneer, and agent of the plaintiffs at the time of the sale.

It is conceded that an auctioneer is primarily deemed the agent of the seller, and it may be admitted that his verbal declarations at the sale, if they do not contradict the written particulars thereof, are admissible against the principal, binding on him as an incident to the authority of the auctioneer to sell. Story on Agency, 108.

If at an auction sale the auctioneer makes misrepresentations as to title or the character of the goods sold, and induces an individual to purchase on the faith of the representations of the auctioneer, the principal would be responsible for the injury resulting to the purchaser. In this case appellee gave his deposition in his own behalf in which he said, "that after the bids had run up to about $1,200 bidding was a little slow. Mr. Foulds was present. I had some conversation with him and he re-assured me that the title to the property was good, stated that they had had the records all examined and that it was all right. I told him I had some valuable property, consisting of patterns, etc., lying on the wharf at Cincinnati, and if the lease should be knocked off to me I wanted to take immediate possession in order to get my property away from the wharf and under shelter. He told me I could get the keys that evening. I told him I did not want to be delayed in examining the title. He said it would be altogether unnecessary; that they had had the title thoroughly examined by a lawyer and that it was undoubtedly all right. He said it would cost me $20 or $25 to have the title examined, and that it would be throwing that much money away, and I supposed he was giving me this advice as a friend and rested contented with the statements of the auctioneer and him and continued to bid on the lease until it was knocked off to me at $1,500."

This quotation is significant in several particulars. First, it must be regarded as sustaining the statement of the auctioneer in relation

to the title, for he deposes that he informed appellee at the sale that a week or ten days would be given him to examine the title, and if it was not satisfactory, he was not bound to take the property. If that was not true, why did he say to Foulds that he did not want to be delayed in examining the property? Second, it shows that he did not rely on the statements made by the auctioneer for he had (as we infer) ceased to bid when the bidding reached $1,200, and would not have bid any more if he had not held the conversation with Foulds on the question of title, and from him learned that he could get immediate possession. The statements of Foulds with those of the auctioneer fully satisfied him, and he made the purchase, which he would not have done if he had not met with Foulds and relied upon what he told him. Third, this statement in the deposition is not consistent with that part of the answer, in which he says that the inducement to make the purchase was the statement of plaintiff's agent that Wolf's title was good.

Foulds was no agent of appellants, but appellee applied to him for advice and if he followed the advice of his friend he has no just cause of complaint against others.

But it may be inferred from other facts to be noticed that appellee was satisfied with his purchase weeks after he made it. The same was made on the 24th of June, and the mortgage sued on was not executed till the 10th of July following. He had full time to inform himself as to the true condition of the title; he also paid the note for the second installment without complaint of defect of title. Moreover, it appears that appellee is in possession of the premises or was when the court below rendered the judgment, and he does not allege that he will not be able to keep possession as long as five years after the expiration of the lease to Wolf.

The alleged failure of consideration for the note sued on had not been made out. Wherefore the judgment must be reversed and the cause remanded with directions to render a judgment for a foreclosure of the mortgage sued on and for other proceedings consistent herewith.

*C. W. Merrill, for appellant.*

*Stevenson, Myers, for appellee.*